By the Court, Bronson, J.
Although one object of the prosecution may be the abatement of the nuisance, there may also be a judgment of fine and imprisonment against the defendants. They must therefore be tried on the same principles which would govern if they were charged with any other misdemeanor. The case does not state the ages of the infant defendants, but if, as was suggested on the argument, some of them are only a year or two old, they are not doli capax, and could not rightfully be convicted of any offence. Nor do I see on what principle the femes covert were included in the indictment. During coverture the husband has the control of the wife’s estate, and if he erect a nuisance on her land, she cannot be made to answer criminally for that offence.
But it is not necessary to discriminate among the defendants ; for, as the case stands, none of them were answerable for this nuisance. It appears that two of the defendants, with Burnett, were in the use and occupation of the red mill; but the necessity of showing that the red mill had some connection with the dam in question was strangely overlooked on the trial. These two defendants must then be regarded as standing on the same footing with the others, and there is no evidence that either of the defendants has done any act whatever in relation to the erection or continuance of the dam. The district attorney seems to have proceeded on the ground that it was enough to show the defendants owners of the property, without proving that they had either made, maintained or in any way sane *483 tioned the construction or continuance of the dam. This doctrine cannot be supported ; but if it could, the prosecution must fail, for the defendants are not the owners of the property. Burnett is the owner. The admission is, “ that the title in fee was held by Moses D. Burnett as trustee for the defendants, who are cestuis que trust of the property.” If “ the title in fee” is in Burnett, it is of no importance that he holds as a trustee, or that the defendants are beneficially interested in the trust. Under our code, those trusts which pass the title to the land ce vest the whole estate in the trustees, in law and in equity, subject only to the execution of the trust;” and “ the persons for whose benefit the trust is created take no estate or interest in the lands, but may enforce the execution of the trust.” (1 R. S. 729, § 60.) If the fact be, as was suggested on the argument, that Burnett has nothing more than a power in trust to sell and convey, then the defendants are owners of the property, and the admission on the trial that “ the title” was in Burnett, must have happened through inadvertence. But we must take the case as it stands, and then I see no principle on which the prosecution can be maintained. When the title passes to the trustee, he takes the rents and profits of the land, and if he uses or permits the property to be used in a mode which proves injurious to the public, it is his fault, and he must answer for it.
I think there is another difficulty in the case. As the Onondaga creek is not a public highway, the erection of the dam was not in itself an illegal act. It was not enough therefore for the prosecutor to allege in the indictment that the defendants built or maintained the dam, without going further and showing how or in what way this exercise of a private right of property became a nuisance to the public. The indictment does state the way in which the dam became a nuisance, but the court refused to instruct the jury that the charge must be proved as it was laid. The substance of the charge is, that by reason of the dam the animal and vegetable substances brought down the stream were collected and accumulated in large quan *484 tities in the pond made by the dam, and became nauseous and offensive and corrupted the water. This charge could not be supported by showing that the injury resulted from the alternate rise and fall of water in the pond, or from the action of the sun upon the vegetable substances growing on the margin or under the shallow waters of the pond. It is not always necessary to prove every averment contained in the indictment, and if the prosecutor had stated twenty different ways in which the dam became a nuisance, 'it would have been sufficient to prove that the injury arose in any one of those ways. (Rex v. Hill, Russ. & Ry. Cr. Cas. 189 ; The People v. Haines, 11 Wend. 557.) But it is not allowable to depart entirely from the averments, and I think the court should have instructed the jury that before they could find the defendants guilty, they must believe that the injury arose in the particular manner mentioned in the indictment. As the dam was not in itself a nuisance, the way in which it became offensive constituted a part of the substance of the issue, and the substance of the issue must always be proved.
The counsel for the people have likened this case to a prosecution for murder, where the manner of the death, and the means by which it was effected must be stated ; and yet the defendant may be convicted, although it turn out upon the trial that the wound was given with a different weapon from that mentioned in the indictment. (Mackalley’s case, 9 Co. 67 ; 2 Inst. 319 ; The King v. Clark, 1 Brod. & Bing. 473 ; 1 East's P. C. 341 ; 2 Hale's P.C. 185.)(a) There the wicked mind, the blow and the death constitute the substance of the charge, and the particular weapon with which the mortal wound was given is not a material circumstance. But here, as the act of the party, to wit, erecting and maintaining the dam, was in itself lawful, the way or manner in which the dam had become a nuisance was a material fact, which should have been *485 proved as laid.(b) If such be not the rule, the defendant can never know what kind of evidence he must be prepared to meet on the trial. Such are my views of this question; but my brethren are of opinion that the substance of the issue was proved.
The former trial and judgment did not constitute a conclusive bar to this prosecution. The complaint is not that the dam was in itself illegal, but that a nuisance had resulted from its erection. It may well be that the dam had not proved injurious to the public at the time the first indictment was found in 1832, and yet that the most mischievous consequences have since followed. Although there may have been no change in the height of the dam, still there may be a difference in the mode of using it, as by drawing down the pond in the daytime, and leaving a large amount of filthy matter, which in 1832 was kept constantly covered with water, exposed to the alternate action of wet and heat. And there are other ways in which the pond may now produce malaria which did not exist at a former period. On this point I think the court below was right; but the verdict must be set aside on the ground that the defendants were not shown to be the authors of the nuisance.
New trial granted.

 See The People v. Colt, (ante, p. 432.)

 See 2 Stark. Ev. 350, 1, Am. ed. 1830.